**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**(EASTERN DIVISION)**

| | |
|---|---|
| VERITAS GLOBAL PROTECTION SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> HANNAH HOWELL; HANNAHHOWELL.COM; JOHN DOES 1-100; XYZ CORPORATIONS 1-100, inclusive, <br><br> Defendants. | Civil Action No. 1:26-cv-11450 <br><br> DEMAND FOR JURY TRIAL |

## **COMPLAINT**

Now comes Plaintiff Veritas Global Protection Services, Inc., ("Veritas"), by and through its attorneys, and hereby alleges as follows:

### **INTRODUCTION**

1. Veritas is a leading administrator of vehicle service contracts and other Finance and Insurance products, serving more than 289,000 customers across the United States and partnering with over 5,000 dealerships. Veritas pays millions of dollars in claims each month and maintains extraordinarily high customer satisfaction. Elijah Norton is its President, sole director, and sole shareholder.

2. For some reason, starting about two months ago, 76 year-old romance novelist Hannah Howell (or a person purporting to be Ms. Howell) began publishing numerous articles defaming Veritas, Mr. Norton, as well as other small to midsize businesses and their owners/operators. Broadly speaking, Howell's articles generate and amplify: fake consumer "reviews" about Veritas; false allegations that Veritas is under "investigation;" and false

allegations that Veritas engages in fraudulent business practices, among many other things. Materially similar articles to those published on Ms. Howell's website have subsequently appeared in numerous other websites — at least 8 of them.

3.      Howell and the proprietors (if any) of these websites are clearly acting in concert to spread false allegations about Veritas. The articles cross-reference each other, use similar, unique, language, contain the same factual errors, and generally all push the exact same talking points.

4.      Howell (and potentially others) have also intentionally given these websites the false patina of legitimacy. One such website for instance, goes by the name "enterprenuer.org" — in an attempt to mimic the legitimate and well-respected website "entrepreneur.org." Howell and/or her co-conspirators have also falsely edited "consumer" reviews to make them appear as if they were posted in 2022 or 2023 — when in reality all of these "reviews" were published by Howell or a co-conspirator in June or July 2025.

5.      This suit seeks to hold Howell and her website responsible for their wrongdoing, defamatory statements, and false advertising.

## PARTIES

6.      Plaintiff Veritas Global Protection Services, INC, is an Arizona corporation with its principal place of business at 3550 N. Central Ave., Suite 800, Phoenix, Arizona 85018. Veritas sells and administers vehicle service contracts, GAP coverage, ancillary products, product warranties, and mechanical breakdown insurance.

7.      On information and belief, Hannah Howell is an individual who resides in Massachusetts, in West Newbury, Essex County. On information and belief, Hannah Howell owns

and operates HannahHowell.com, which is a corporation, partnership, limited liability corporation, or other business entity established under the laws of the United States or some other country.

8.    Defendants John Does 1-100 are currently unknown persons that have conspired with Howell to spread false and defamatory information about Veritas, including through the websites "Enterprenuer.org"; "IntelligenceLine.com"; "FinanceScam.com"; "Vossity.com."; and "CyberCriminal.com"

9.    Defendants XYZ Corporations 1-100 are currently unknown corporate entities that own that have conspired with Howell to spread false and defamatory information about Veritas, including through the websites "Enterprenuer.org"; "IntelligenceLine.com"; "FinanceScam.com"; "Vossity.com."; and "CyberCriminal.com."

## JURISDICTION AND VENUE

10.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs claims arise in part under the Lanham Act, 15 U.S.C. § 1125(a).

11.    This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.    In accordance with 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiffs' state-law claims, which form part of the same case or controversy.

13.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), (3) because Defendant Hannah Howell resides and operates Defendant HannahHowell.com in this District.

**ALLEGATIONS**

**I.    FALSE STATEMENTS ON HANNAHHOWELL.COM**

14.    According to Defendant HannahHowell.com, Defendant Hannah Howell is an "[a]ward-[w]inning [a]uther" who has published over 40 "historical romance novels" under various pen names. https://hannahhowell.com/about-us/. Defendant HannahHowell.com states that Defendant Hannah Howell was born in 1950 — making her 76 years old.

15.    For some bizarre and unknown reason, on July 8, 2025, Ms. Howell (or a person purporting to be Ms. Howell) began to publish negative blog-posts about various business executives, almost all of whom own or operate small to medium sized businesses.

16.    To date, Ms. Howell has written 16 such articles; of those 16, 3 are about Veritas or Norton: (1) "*Veritas Global Protection Lawsuit Sets Standard for Corporate Address Changes*"(the "First Howell Article") (https://hannahhowell.com/veritas-global-protection-lawsuit-sets-standard-for-corporate-address-changes/); (2) "*Elijah Norton: A Visionary Leader Facing Customer Backlash!*" (the "Second Howell Article") (https://hannahhowell.com/elijah-norton-a-visionary-leader-facing-customer-backlash/); and (3) "*Veritas Global Protection Reviews: A Trail of Denied Claims and Customer Complaints*" (the "Third Howell Article") (https://hannahhowell.com/veritas-global-protection-reviews/).

17.    The First Howell Article was posted on July 9, 2025. Among other things, the First Howell Article falsely describes a 2023 lawsuit filed in Pennsylvania state court against Veritas by a plaintiff named Nancy Maggio. The Article intentionally portrays this very minor litigation as one that "sets [the] standard for corporate address changes" and otherwise involving serious concerns about "corporate responsibilities." The Article goes so far as to assert that the case, and others, "ultimately stand for the principle that corporations cannot use their administrative failures

to avoid legitimate legal process." In reality, in the *Maggio* case, the plaintiff attempted to serve Veritas at an old address; thus the dispute simply concerned whether Veritas had appropriately updated its address for purposes of service. The matter has long since been settled.

18.     The First Howell Article's discussion of the *Maggio* case is particularly relevant here, as the *Maggio* case is frequently referenced, and described in the exact same way, in other websites published by Howell or her co-conspirators, as discussed below.

19.     The Second Howell Article was posted on July 10, 2025. Among other things, the Second Howell Article paints Norton and Veritas in a false light and defames them by falsely claiming that they have suffered an increase in customer complaints, "potential regulatory action," legal disputes, and business disagreements.

20.     Although the Second Howell Article routinely accuses Norton of facing "legal troubles," it fails to explain that these "legal" issues were all cases that *Norton* filed as plaintiff, not the other way around, and fails to mention that the settlement awards made in some of these cases were made *to Norton*, not to the opposing party.

21.     The Second Howell Article also routinely misconstrues the facts of various lawsuits involving Norton or Veritas. For instance, the Second Howell Article falsely claims that a lawsuit filed by Veritas against Bee Auto Administration involved a "contractual dispute" — with the intention of implying that Veritas violated some contract with its "business partner" Bee Auto. In reality, Veritas sued Bee Auto Administration because it had misappropriated Veritas's intellectual property; there was no contract between the two companies.

22.     The Third Howell Article was published July 20, 2025, and is the most egregious of the bunch. Among other things, the Third Howell Article  falsely asserts that: (1) Veritas "stonewall[s]" customers, leading to "financial devastation"; (2)  Veritas inappropriately rejected

a claim for an A/C repair made by a Veritas customer in the middle of the Arizona summer (this matter is misrepresented); (3) that Veritas has denial rates that "approach the absurd" and far exceed industry standard (Veritas's denial rates are far below industry standard); (4) Veritas has exploited "regulatory gray area[s]" to make a profit (Veritas is regulated by the Arizona Department of Insurance and Financial Institutions and has an insurance producer business entity license in all 50 U.S. states); and (5) that Veritas has filed fraudulent DMCA takedown notices to silence legitimate customer complaints (Veritas has never filed a DMCA takedown notice).

23.    The Third Howell Article craftily inserts supposed negative "facts" about the extended warranty industry *generally* into discussions of *Veritas* in order to dupe readers into believing that these "facts" relate to Veritas. An example of this can be seen in the following excerpt: "The Federal Trade Commission reports that extended warranty complaints rank among the top consumer grievances, with financial hardship cited in 73% of cases. The Veritas files reveal why: denied claims don't just cost money—they arrive at life's worst moments." Of course, the "73%" figure and "extended warranty complaints" refer to industry wide issues, not to Veritas specifically.

24.    The Third Howell Article also references and relies on reviews made on SiteJabber.com and on a blog post made by Greg McNair. On information and belief, Howell either knew or should have known that: (1) SiteJabber.com intentionally makes it more difficult for individuals to post "positive" reviews of companies that do not pay a SiteJabber.com subscription fee and (2) that the Greg McNair blog post was fake and/or does not accurately reflect Mr. McNair's experience with Veritas.

25.    The Third Howell Article also features Veritas's logo, without permission or consent.

26.     Defendants never attempted to contact Veritas or Norton prior to writing the First, Second, or Third Howell Articles.

27.     Defendants have never been customers of Veritas, have never purchased a Veritas administered Vehicle Service Contract, and have never had any interaction with Veritas or Norton.

28.     On information and belief, the Defendants Howell and HannahHowell.com conspired with the other individuals in publishing the Howell Articles.

## II.     FALSE STATEMENTS ON  PATTYFRIEDMANN.COM

29.     According to PattyFriedmann.com, Patty Friedmann has authored several novels in the "dark comedy" genre. PattyFriedmann.com states that Ms. Friedmann was born in 1946 — making her 79 years old.

30.     For some bizarre and unknown reason, Ms. Friedmann, like Ms. Howell, recently began publishing hit pieces against corporations and corporate executives on her website.

31.     On July 21, 2025 — just one day after the Third Howell Article was published — Ms. Friedmann posted an article titled "*Veritas Global Protection Review Lawsuits and Complaints*." (the "Friedmann Article"). https://pattyfriedmann.com/veritas-global-protection-reviews-lawsuits-and-complaints/

32.     Among other things, the Friedmann Article contains many of the same false allegations as the Howell Articles and further falsely claims that Veritas: (1) intentionally hides its administrator and insurer (this information is disclosed on Veritas's website, marketing material, and even the service contract that is distributed to customers); (2) has a "C-" rating with the Better Business Bureau (Veritas has always had a rating of B+ or better, and currently has an "A+" rating); (3) that Veritas was accused of "property fraud" in New York  which "implies there might have been a real estate or investment-related dispute involving the company" (Veritas owns no

- 7 -

property in New York and has never been accused of property or investment fraud); (4) that "impartial industry analysis" has been "critical" of Veritas (there has been no such "impartial industry analysis"); and (5) that Veritas's actions will likely lead to a "major class action or regulatory crackdown."

33. On information and belief, Howell conspired with Ms. Friedman or some other unknown conspirator in drafting the Friedmann Article. The Friedmann Article references "Hannah Howell['s] investigative piece" on Veritas and generally mirrors the statements made in the Howell Articles. The Friedmann Article also references statements made on IntellingenceLine.com, which is discussed *infra*.

34. Moreover, Patty Friedman has never been a customer of Veritas and has never spoken with or otherwise interacted with Veritas or Norton. Thus Ms. Friedman could not have had the basis to draft the Friedmann Article without outside influences.

### III.    FALSE STATEMENTS ON ENTERPRENUER.COM

35. On information and belief, the website "Enterprenuer.org" is intentionally misspelled to mimic the legitimate website Entrepreneur.com. In fact, the real Entrepreneur.com recently sued Enterprenuer.org for, among other things, trademark infringement and unfair competition. *See* Complaint, *Entrepreneur Media LLC v. John Doe d/b/a Enterprenuer.org*, Case No. 8:25-cv-01007 (C.D. Cal., filed May 12, 2025).

36. On information and belief, Enterprenuer.org intentionally publishes fake "interviews" with corporate executives in an attempt to force these executives to make some sort of payment to Enterprenuer.com.

37. On July 6, 2025 — three days before the First Howell Article —Enterprenuer.org published a fake "interview" with Elijah Norton, titled "*Meet Elijah Norton, Founder of Veritas*

*Global Protection.*" (the "Fake Interview"), https://enterprenuer.org/founders/meet-elijah-norton-founder-of-veritas-global-protection/.

38.     Enterprenuer.org has never interviewed Elijah Norton and at no point did Mr. Norton give the statements attributed to him in the Fake Interview.

39.     Although the Fake Interview generally portrays Mr. Norton in a positive light, on or around August 2025, Enterprenuer.org affixed a red box titled "Alert" on top of the Fake Interview (the "Alert").

40.     The Alert contains many of the same defamatory and false statements as the Howell and Friedmann Articles relating to "content suppression," lawsuits, "property fraud," regulatory and public "scrutiny," and increasing "customer complaints."

41.     On information and belief, Defendants Howell and HannahHowell.com conspired with Enterprenuer.org in authoring and publishing the Alert and Fake Interview.  Indeed, the Alert cites to only five external sources: three are the First through Third Howell Articles and another is to the Friedmann Article.

### IV.     FALSE STATEMENTS ON INTELLIGENCELINE.COM

42.     IntelligenceLine.com has published at least four negative "articles" about Veritas: (1) *"Veritas Global Protection Flagged for Fraudulent Practices"* (the "First IntelligenceLine Article")   https://www.intelligenceline.com/r/Reports/186051/veritas-global-protection-flagged-for-fraudulent-practices/; (2) "*Veritas Global Protection Operations Risks and Reputational Challenges*" (the "Second IntelligenceLine Article") https://www.intelligenceline.com/r/Reports/186016/veritas-global-protection-operations-risks-and-reputational-challenges/, (3) "*Veritas Global Protection Fake Promises and Opaque Business Practices*" (the "Third IntelligenceLine Article")

https://www.intelligenceline.com/r/Reports/186125/veritas-global-protection-fake-promises-opaque-business-practices/; and (4) *Veritas Global Protection Averages Low Reviews Across Platforms* (the "Fourth IntelligenceLine Article") https://www.intelligenceline.com/r/Reports/186083/veritas-global-protection-averages-low-reviews-across-platforms/.

43.    On information and belief, the First through Fourth IntelligenceLine Articles were all published between June and July 2025 — around the same time as the "articles" described in this Complaint.

44.    The First through Fourth IntelligenceLine Articles all feature the Veritas logo without authorization or consent.

45.    The First through Fourth IntelligenceLine Articles generally claim that IntelligenceLine.com has conducted a "rigorous" "investigation" into Veritas involving "open-source intelligence," a "consumer feedback analysis," a "legal and regulatory review," and a "risk assessment." In reality, all of the IntelligenceLine Articles appear to be generated by artificial intelligence or at the very least have been "copy pasted" from some other source.

46.    Among other things, the First IntelligenceLine Article falsely states that: (1) Veritas engages in "fraudulent practices;" (2) Veritas has "ties to third-party claims administrators" including Premier Warranty Group, Shield Auto Care, and Aetna Warranty Services, LLC (Veritas *is* a third-party claims administrator and does not have ties with these companies); (3) Veritas has "links to shell companies in jurisdictions like Panama and the Cayman islands" (it does not); (4) Veritas has contracts with "overseas call centers in regions like the Philippines" (it does not); (5) Veritas is a "risky choice in the extended warranty market";   (6) lists plainly false information about Veritas's business, like the patently false claim that a person named "Robert Callahan" is

Veritas's president and a person named "Michael Tague" is the CEO (neither person, assuming they exist, has ever worked for Veritas) and (7) claims that Veritas's website only provides "minimal" information about its management team (in reality, all of Veritas's executives are identified on Veritas's website, https://veritasprotection.com/about-us/our-team/).

47.     Among other things, the Second IntelligenceLine Article falsely claims that: (1) Veritas has had "recurring complaints" about delayed claims; (2) that Veritas is a "potential target for money laundering" due to its "opaque operations"; and (3) Veritas has unaddressed "operational and transparency issues."

48.     Among other things, the Third IntelligenceLine Article falsely claims that Veritas: (1) has opaque business practices;  (2) "works with" Aetna Warranty Services, LLC; (3) has a "C" rating with the BBB; (4) has various "red flags;" and (5) has substantial consumer complaints.

49.     Among other things, the Fourth IntelligenceLine Article falsely claims that Veritas has a "concerning" "lack of transparency," contains false information about Veritas's corporate structure, and falsely inflates the number of "negative" consumer complaints that have been made against Veritas.

50.     On information and belief, Defendants Howell and HannahHowell.com conspired with IntelligencLine.com in authoring and publishing the IntelligenceLine Articles. Indeed, the Third and Fourth IntelligenceLine Articles contain a substantial discussion of the *Maggio* matter that is discussed in the First Howell Article. And, as discussed below, FinanceScam.com published materially identical articles about Plaintiffs as IntelligenceLine.com.

## V.     FALSE STATEMENTS ON FINANCESCAM.COM

51.     FinanceScam.com is extremely similar, and identical in all relevant respects, to IntelligenceLine.com.

52.    On information and belief, on June 14, 2025, the FinanceScam.com published five false and defamatory articles about Veritas: (1) "*Veritas Global Protection: Accredited Yet Untrustworthy*" (the "First FinanceScam Article") https://www.financescam.com/2025/06/14/veritas-global-protection-accredited-yet-untrustworthy/, (2) "*Veritas Global: Business Practices and Reputational Risks*" (the "Second FinanceScam Article") https://www.financescam.com/2025/06/14/veritas-global-protection-business-practices-and-reputational-risks/, (3) "*Veritas Global: Protection Scams, Business Ties, and Associated Risk*" (the "Second FinanceScam Article") https://www.financescam.com/2025/06/14/veritas-global-protection-scams-business-ties-and-associated-risk/, (4) "*Veritas Global Protection Exposed*" (the "Fourth FinanceScam Article") https://www.financescam.com/2025/06/14/veritas-global-protection-exposed/, and (5) *Veritas Global Protection: A Deep Dive Into Business Relations and Reputational Risks* (the "Fifth FinanceScam Article") https://www.financescam.com/2025/06/14/veritas-global-protection-a-deep-dive-into-business-relations-allegations-and-reputational-risks/.

53.    The FinanceScam Articles are effectively identical to the IntelligenceLine Articles and, therefore, contain much of the same defamatory information. For instance, like the IntelligenceLine Articles, the FinanceScam Articles: (1) contain obviously incorrect information about Veritas's corporate structure, like the incorrect claim that "Michael Tague" is Veritas's CEO; (2) falsely assert that Veritas is "administered" by Aetna Warranty Services, LLC; (3) falsely assert that Veritas "holds a BBB rating of C-"; (4) falsely asserts that Veritas has a connection with "offshore entities in jurisdictions like the British Virgin Islands," (5) falsely asserts that "information on… senior leaders is limited" (in fact, Veritas publishes the names of its executives on its website) and (6)  falsely asserts that Veritas has faced an uptick in "consumer complaints."

54.     The FinanceScam Articles have the same general formatting as the IntelligenceLine Articles.

55.     The FinanceScam Articles and IntelligenceLine Articles have certain unique errors that could only be shared if the two sites were connected.  For instance, both the FinanceScam Articles and IntellingenceLine Articles claim  fictitious persons named Robert Callahan and Michael Tague hold prominent executive positions in Veritas and both websites falsely claim that Veritas does not disclose the names of their executives.

56.     Accordingly, on information and belief, Defendants Howell and HannahHowell.com conspired with FinanceScam.com in drafting and publishing the FinanceScam Articles.

## VI.     FALSE STATEMENTS ON VOSSITY.COM

57.     Vossity.com states that its goal is to "amplify [consumer] anger to hold unethical businesses accountable."

58.     On information and belief, the proprietors of Vossity.com create fake "forum" websites that are designed to appear as if they contain legitimate customer comments.

59.     On information and belief, in June or July 2025, the proprietors of Vossity.com created a fake "forum" thread titled "Consumer Warning: Veritas Global Protection Scam, Please Avoid." https://vossity.com/discussion/consumer-warning-veritas-global-protection-scam-please-avoid/

60.     On information and belief, in the fake "forum" thread, the proprietors of Vossity.com generated fake comments by fake persons, specifically designed to trick average readers into believing that the comments were legitimate.

61.    For instance, in the fake forum, a "Stephan Nay" claims to have owned a car dealership that sold Veritas warranties for "several months." "Stephan Nay" claims that Veritas "would not cover" customer claims and that, therefore his (fake) dealership "discontinued doing business with [Veritas.]"

62.    Veritas has never sold any product to a person named "Stephan Nay."

63.    On information and belief, "Stephan Nay" is a fake person created by the proprietors of Vossity.com.

64.    On information and belief, the proprietors of Vossity.com manipulated the fake "forum" website to make it appear as if "Stephan Nay's" thread was posted on April 19, 2022 — when in reality this thread was posted in June or July 2025.

65.    In the fake forum, a "Sam Stewart" claims that he purchased a 2019 Maserati in "March 2025" which experienced and engine failure on June 9. "Sam Stewart" claims that Veritas denied his claim for $40,000 for engine repairs. "Sam Stewart" claims that he is "working with legal counsel, the media, and law enforcement to address my case…"

66.    Veritas has never sold products to a person named "Sam Stewart" relating to a 2019 Maserati.

67.    On information and belief, "Sam Stewart" is a fake person created by the proprietors of Vossity.com.

68.    On information and belief, the proprietors of Vossity.com manipulated the fake "forum" website to make it appear as if "Sam Stewart's" post was made on May 8, 2022. However, "Sam Stewart's" post references actions he supposedly took in March 2025 — and therefore could not have possibly been made in May 2022. "Sam Stewart's" post also cites to the First Howell Article, which was published in July 2025.

69.    "Sam Stewart's" post references numerous items that are consistently discussed by the other defamatory articles — including the *Maggio* case, BBB ratings, and consumer complaints. "Sam Stewart's" post also uses similar language as the other articles discussed in this Complaint, like the specific phrase "aggressive sales tactics."

70.    In the fake forum, a "Susan" claimed to have purchased a warranty for a used car her son bought in November 2022. After this car supposedly "broke down," "Susan" claims that Veritas "gave both my son and the repair shop the run around and eventually stated the work/parts are not covered."

71.    On information and belief, "Susan" is a fake person created by the proprietors of Vossity.com.

72.    On information and belief, the proprietors of Vossity.com manipulated the fake "forum" to make it appear as if "Susan's" post was made in February, 2023. However, in the post "Susan" claimed that Veritas did not deny her son's claim until <u>June</u> 2023 — and therefore could not have made the post in February, 2023.

73.    In the fake forum, a "Mark" claims that Veritas denied a claim he made for a broken A/C "in the middle of the summer." This is nearly identical to a story relayed in the Third Howell Article and is, likewise, false.

74.    On information and belief, "Mark" is a fake person created by the proprietors of Vossity.com.

75.    On information and belief, on Defendants Howell and HannahHowell.com conspired with the proprietors of Vossity.com in creating the fake "forum" and the fake comment threads discussed above.

**VII.   <u>FALSE STATEMENTS ON CYBERCRIMINAL.COM</u>**

76.     CyberCriminal.com states that it is a site where a user can "browse through our cyber intelligence agency reports, domain checks and investigations, and also stop cyber crimes before it [*sic*] happens." CyberCrime.com claims to have reviewed over 12,000 websites and "20,000" incidents, performed "5,000+ due diligence" reviews, and reported "$18 million worth in scams…"

77.     Despite its apparent goal to stop "cyber crime," CyberCriminal.com advertises a "reputation" service that will "scrub" negative online statements about a person or business. Thus, on information and belief, CyberCriminal.com intentionally generates false or negative reviews about corporations or persons, with the explicit goal of pressuring those individuals into purchasing CyberCriminal.com's "reputation" services.

78.     On or around June 14, 2024, CyberCriminal.com published a website page dedicated to Veritas (the "Veritas Page"). https://cybercriminal.com/threats/veritas-global-protection.

79.     The Veritas Page contains numerous false and defamatory statements, including the claims that: (1) Veritas is "being investigated for a series of cyber crimes involving Fake DMCA" notices (there is no such investigation by any legitimate regulatory agency); (2)  Veritas has intentionally "delayed refunds" and "censored" legitimate customer feedback; (3)  Veritas has a "critical" accumulation of "adverse media" and "negative consumer reviews," and (4) Veritas has participated in "deceptive trade practices" and "reli[es] on questionable sales tactics."

80.     The Veritas Page claims that users may "read more about" the "Fake DMCA Takedown Scam" involving Veritas at https://cybercriminal.com/investigation/veritas-global-protection (the "Veritas Investigation Page").

81. The Veritas Investigation Page is also on CyberCriminal.com.

82. The Veritas Investigation Page states that "we are investigating Veritas Global Protection for allegedly attempting to conceal critical reviews and adverse news from Google by improperly submitting copyright takedown notices." Thus, the Veritas Investigation Page confirms that the "DMCA Investigation" reference on the Veritas Page is not a legitimate regulatory action, but instead a supposed "investigation" conducted by CyberCriminal.com.

83. The Veritas Investigation Page falsely infers that a person named "Ethan Katz" conducted a specialized "investigation" by claiming that tools like "Lumen" and "Security Trails" were used in this "investigation." In reality, no such "investigation" took place.

84. The Veritas Investigation Page contains numerous false and defamatory statements about Veritas, including the false statements that: (1) Veritas has committed "perjury, fraud, and impersonation" or is engaged in an "intellectually property scam," (2) Veritas has engaged in "deceptive practices and fraudulent behavior"; and (3) Veritas has "stonewall[ed]" customer claims.

85. The Veritas Investigation Page also generally repeats the same talking points made by the Howell, Friedmann, Enterprenuer.org, IntellignceLine.com, Vossity.com, and FinanceScam.com.

86. On information and belief, Defendants Howell and HannahHowell.com conspired with CyberCriminal.com in publishing and generating the Veritas Page and Veritas Investigation Page.

## VIII. DAMAGES

87. Potential Veritas consumers rely on online reviews and statements when deciding whether to purchase F&I or other products administered by Veritas.

88.     On information and belief, potential Veritas customers have chosen not to purchase Veritas' products based on false information posted by Defendants Hannah Howell and HannahHowell.com.

89.     On information and belief, potential Veritas customers have chosen not to purchase Veritas' products based on false information posted on websites "Enterprenuer.org"; "IntelligenceLine.com"; "FinanceScam.com"; "Vossity.com."; and "CyberCriminal.com" — all of which was either authored or otherwise promoted by Defendants Hannah Howell and HannahHowell.com.

90.     Sinc January 2024, at least five car dealership groups have terminated relationships with Veritas based on negative online review.

**<u>FIRST CLAIM FOR RELIEF</u>**

**(False Advertising – Lanham Act, 15 U.S.C. § 1125)**

91.     Veritas incorporates all prior allegations.

92.     Defendants have published or caused to be published false consumer reviews and other statements about Veritas and Elijah Norton, as alleged above.

93.     These false statements are likely to confuse, mistake, or deceive consumers about Veritas's goods or services, in violation of 15 U.S.C. § 1125(a)(1)(A).

94.     Defendants have also made misrepresentations in their "advertising or promoation[al]" activities, in violation of 15 U.S.C. § 1125(a)(1)(B).

95.     Even if any portion of Defendants' statements are not literally false, the statements are nevertheless intentionally misleading in how they are presented. Consumers thus encounter a materially distorted impression of Veritas's reputation and the quality of its contract administration services.

96.     Defendant's deception is material. As discussed, potential Veritas consumers rely on Defendants statements when deciding whether to purchase F&I or other products administered by Veritas and since January 2024, at least five dealership groups have terminated relationships with Veritas based on negative online reviews.

97.     Defendants' interstate publication of these statements proximately caused Veritas to lose sales and suffer reputational injury.

98.     As a direct and proximate cause of Defendant's conduct, Veritas has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### (Unfair Trade Practices – Mass. Gen. Laws. Ch. 93A § 11.)

99.     Veritas incorporates all prior allegations.

100.     "Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property … as a result of the use … by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice … may … bring an action" in court. Mass. Gen. Laws Ch. 93A§ 11.

101.     Veritas is "engaged in the conduct of any trade or commerce." *See id.*

102.     Defendants are "engage[d] in any trade or commerce." *See id.*

103.     Defendants have used an "unfair method of competition and unfair or deceptive act[] or practice[]" in the conduct of trade or commerce by, among other things, generating false "reviews" and blog posts about Veritas and Elijah Norton and coordinating similar statements made by the other Defendants.

104.    Defendants' " actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth" of Massachusetts. *See id.*

105.    Reasonable consumers are likely to be deceived by Defendants' false statements.

106.    Veritas has suffered damages stemming from Defendants' actions.

107.    Because Defendants' conduct was willful or knowing, Veritas is entitled to up to three times the actual damages. Mass. Gen. Laws Ch. 93A§ 11.

108.    Veritas is entitled to an award of reasonable attorneys' fees and costs. Mass. Gen. Laws Ch. 93A§ 11.

## THIRD CLAIM FOR RELIEF

### (Defamation/Trade Libel)

109.    Veritas incorporates all prior allegations.

110.    Plaintiffs are not public figures.

111.    Defendants have published numerous false and unprivileged statements of facts about Plaintiffs. None of these false statements concerned matters of public concern.

112.    Among many other things, Defendants' false statements expressly or impliedly assert that Plaintiffs engage in fraudulent practices, refuse to honor claims, and mislead consumers—conduct that can be proven true or false and are therefore actionable.

113.    Defendants' false statements harm Plaintiffs' reputation.

114.    Defendants' false statements were made with knowledge that they were false or with reckless disregard to the truth.

115.    Defendants' false statements are libel per se, and therefore Plaintiffs need not establish damages. However, Veritas has in fact suffered economic, reputational, and other harms stemming from Defendants' conduct.

116.    Because Defendants' acted with actual malice, Plaintiffs are entitled to punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Injunctive Relief)

117.    Veritas incorporates all prior allegations.

118.    Defendant's ongoing publication of false and defamatory information about Plaintiffs cause irreparable harm not fully compensable by money damages.

119.    Plaintiffs seek permanent injunctive relief requiring Defendants to remove all "articles" or "sites" or "forums" or any other material that references Veritas or Elijah Norton and cease its misrepresentation moving forward.

## PRAYER FOR RELIEF

**WHEREFORE**, Veritas prays for relief and respectfully requests that the Court enter judgment as follows:

1.    Awarding compensatory and special damages in an amount to be proven at trial;

2.    Awarding statutory and treble damages under the Lanham Act;

3.    Awarding punitive damages;

4.    Issuing permanent injunctive relief as requested;

5.    Awarding attorneys' fees and costs; and

Granting such further and other relief as the Court deems just and proper.

- 22 -

Dated: March 26, 2026

Respectfully submitted,

**VERITAS GLOBAL PROTECTION SERVICES, INC.**

By and Through Its Attorneys,

*/s/ Jacob C. Jones*

Jacob C. Jones (BBO #714089)
Brett W. Johnson, *Pro Hac Vice forthcoming*
Ian R. Joyce, *Pro Hac Vice forthcoming*
Ijeoma Odigwe, *Pro Hac Vice forthcoming*
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, AZ 85004-2556
T (602) 382-6000; F (602) 382-6070
jcjones@swlaw.com
bwjohnson@swlaw.com
ijoyce@swlaw.com
eodigwe@swlaw.com